Ryan Watson
7239

Brett N. Anderson (11809)
Scott R. Taylor (12392)
BLACKBURN & STOLL, LC
200 South 257 East, Suite 800
Salt Lake City, UT 84111
Telephone: (801) 578-3540
bretta@blackburn-stoll.com

*Attorneys for Plaintiffs, Roland Li (individually and derivatively and directly on behalf of Akirix L.L.C.); Akirix L.L.C., and other Plaintiff entities*

John Mackay (6923)
RAY, QUINNEY & NEBEKER
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
jmackay@RQN.com

*Attorneys for Plaintiff, Larry Lewis*

**IN THE SECOND JUDICIAL DISTRICT COURT**
**IN AND FOR WEBER COUNTY, STATE OF UTAH**

| | |
|---|---|
| YOU "ROLAND" LI, individually and derivatively on behalf of AKIRIX L.L.C., a Utah limited liability Company; LARRY LEWIS, individually; AKIRIX L.L.C., a Utah limited liability Company; OCP L.L.C., a Utah limited liability company; Kurious, LLC, a Utah limited liability company; LLC Investment Holdings, LLC, a Utah limited liability company;<br><br>Plaintiffs,<br><br>vs.<br><br>JACK LEWIS, an individual defendant and nominee;<br><br>Defendant,<br><br>INTERNAL REVENUE SERVICE, a Bureau of the DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA, a necessary party,<br><br>Stakeholder. | **SUMMONS**<br>**(INTERNAL REVENUE SERVICE)**<br><br>Civil No. 190905393<br><br>Judge Noel Hyde<br><br>[Tier 3] |
| AND ALL RELATED CLAIMS. | |

TO: United States Attorney's Office - Utah
Civil Process Clerk
111 Main St #1800
Salt Lake City, UT 84111

Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
178 S. Rio Grande St.
Salt Lake City, UT 84101

A lawsuit has been filed against you. Within 60 days you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiffs or plaintiffs' attorneys, whose names and addresses are:

Brett N. Anderson (11809)
Scott R. Taylor (12392)
BLACKBURN & STOLL, LC
200 South 257 East, Suite 800
Salt Lake City, UT 84111
Telephone: (801) 578-3540
bretta@blackburn-stoll.com

John Mackay (6923)
RAY, QUINNEY & NEBEKER
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
jmackay@RQN.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DATED this 3rd day of January 2020.

BLACKBURN & STOLL, LC

/s/ Brett N. Anderson
Brett N. Anderson
Scott R. Taylor
*Attorneys for Plaintiffs, Roland Li (individually and derivatively and directly on behalf of Akirix, LLC); Akirix, LLC, and other Plaintiff entities*

Brett N. Anderson (11809)
Scott R. Taylor (12392)
BLACKBURN & STOLL, LC
200 South 257 East, Suite 800
Salt Lake City, UT 84111
Telephone: (801) 578-3540
bretta@blackburn-stoll.com

*Attorneys for Plaintiffs, Roland Li (individually and derivatively and directly on behalf of Akirix, LLC); Akirix, LLC, and other Plaintiff entities*

John Mackay (6923)
RAY, QUINNEY & NEBEKER
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
jmackay@RQN.com

*Attorneys for Plaintiff, Larry Lewis*

---

**IN THE SECOND JUDICIAL DISTRICT COURT**
**IN AND FOR WEBER COUNTY, STATE OF UTAH**

| | |
|---|---|
| YOU "ROLAND" LI, individually and derivatively on behalf of AKIRIX LLC, a Utah limited liability Company; LARRY LEWIS, individually; AKIRIX LLC, a Utah limited liability Company; OCP LLC, a Utah limited liability company; Kurious, LLC, a Utah limited liability company; LLC Investment Holdings, LLC, a Utah limited liability company;<br><br>Plaintiffs,<br><br>vs.<br><br>JACK LEWIS, an individual defendant and nominee;<br><br>Defendant,<br><br>INTERNAL REVENUE SERVICE, a Bureau of the DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA, a necessary party,<br><br>Stakeholder. | **VERIFIED FIRST AMENDED COMPLAINT**<br><br>Civil No. 190905393<br><br>Judge Noel Hyde<br><br>[Tier 3] |

Plaintiffs, You "Roland" Li ("Plaintiff" or "Roland"), individually and in his capacity as a member of Akirix LLC ("Akirix" or "Company"); Larry Lewis ("Larry"), individually; Akirix LLC; OCP LLC; Kurious, LLC; and LLC Investment Holdings, LLC; hereby complain and allege as against Defendant, Jack Lewis ("Defendant" or "Jack"), and Stakeholder, the Internal Revenue Service, a Bureau of the Department Of Treasury, United States Of America. The Internal Revenue Service is named as a necessary party in the nature of interpleader pursuant to 28 U.S.C. § 2410 because it has claimed a lien on property and ownership interests disputed in this litigation.

## INTRODUCTION

1. Akirix is a financial technology company founded and owned by Plaintiffs, Larry Lewis and Roland Li. Larry and Roland started Akirix in 2011. From day one, Larry has run the company, acquired and maintained the customers, and otherwise managed the day-to-day affairs of the company.

2. Similarly, from the outset, Roland has created, managed, developed, and protected the software and intellectual property that runs the company that he and Larry created.

3. Larry and Roland are a dynamic team. They grew Akirix from the ground up to a company that processed $1.6 billion in international client transactions in 2018. Until recent events transpired that compelled the filing of this litigation, Akirix proudly supported 14 full-time employees and their families, 3 full-time consultants, and 1 part-time consultant.

4. Numerous other companies were also started by Larry, some of which are affiliated with or have a business relationship with Akirix and others are in a different line of business altogether. These companies are: Kurious LLC; Click Tribe, LLC; OCP LLC; and LLC Investment Holdings, LLC.

5. Defendant, Jack Lewis, is Larry's brother. As described below, Jack Lewis was Larry's nominee and, several years after the company was founded and it began to see success, Jack was hired by Akirix. He was subsequently given increasing responsibility as a compliance officer. Jack is not and never has been an actual owner or member of Akirix or any of the related companies. He knows this and has admitted it.

6. In late 2018 and early 2019, Larry Lewis disclosed to Jack that Larry intended to initiate discussions with the I.R.S. and to resolve past tax liabilities – the clear implication being that the nominee relationship with Jack would need to be disclosed and/or terminated.

7. The parties talked about reconciling payments to Jack. However, Jack panicked – believing that any money offered to the I.R.S. would likely reduce money to him and/or that the I.R.S. would investigate his personal affairs – and so he consequently engineered a take-over strategy designed to hold Akirix and the related companies hostage and force a negotiated exit or settlement.

8. Jack's strategy involved surreptitiously taking control of Akirix's accounts in March and April 2019, all in violation of Akirix and banking policies and security protocols.

9. In an effort to resolve the dispute and minimize potential harm to Akirix and the related companies, Larry Lewis entered into discussions with Jack Lewis to explore a compromise and settlement in which Jack Lewis would be terminated and leave Akirix and cease to be a nominee for the related companies. Those discussions, after months of effort, have been unsuccessful.

10. Given the harm to Akirix and the related companies, and Jack Lewis' unwillingness to allow Akirix funds that he removed to be used for company purposes, Larry and Roland have now taken appropriate steps in early September 2019 to notify the State of Utah and

the banks of the actual ownership of Akirix and the related companies, and to remove Jack Lewis' name from such records to protect the company and its assets. In essence, Plaintiffs have sought to acknowledge the realities of the nominee agreement (and Jack's lack of ownership and control thereunder); to take steps to move beyond the nominee agreement, including with the I.R.S.; and to undo the unauthorized take-over of accounts by Jack Lewis.

11. In addition, Plaintiffs immediately filed this action seeking to have the Court resolve their disputed interests with respect to ownership and control of Akirix and the related companies.

12. Moreover, Larry Lewis has personally made disclosure and had discussions with the I.R.S., which likely will claim an interest in the accounts and assets at issue in this litigation. For example, the I.R.S. filed broad notices of federal tax liens against Larry Lewis with the Weber County Recorder in 2011 and 2013 over long-standing tax disputes.

13. In response to steps by Larry and Akirix, Jack has tried to regain personal control or possession of the banking accounts through *additional* unauthorized conduct in recent weeks (which threatens the very viability of Akirix); has attempted to interfere with and/or terminate Akirix's banking relationships; and has even terminated the utilities services to the building in which Akirix operates.

14. Fortunately, the Court entered a TRO on September 13, 2019 to restore the utility services inexplicably terminated by Jack, temporarily stalling Jack's interference with Akirix.

## PARTIES

15. Plaintiff, Akirix, LLC, is a Utah limited liability company, with its principal place of business in Weber County.

16. Plaintiff, Roland Li, was at all material times relevant to this action a member of Akirix.

17. Plaintiff, Larry Lewis, was at all material times relevant to this action a member of Akirix, Click Tribe, LLC, Kurious, LLC, and LLC Investment Holdings, LLC.

18. Plaintiff, Kurious, LLC, is a Utah limited liability Company, with its principal place of business in Weber County.

19. Plaintiff, Click Tribe, LLC, is a Utah limited liability Company, with its principal place of business in Weber County.

20. Plaintiff, LLC Investment Holdings, LLC, is a Utah limited liability Company, with its principal place of business in Weber County.[1]

21. The Internal Revenue Service is a stakeholder which may have an interest in the interpled property and assets/property and/or rights to property of Larry Lewis even if such property is currently nominally held or titled in the name of Jack Lewis pursuant to the Nominee Strategy (see below).

22. Defendant, Jack Lewis, was at all material times relevant to this action a mere nominee for his brother Larry (and thus merely a nominal member and nominal manager of record), although since 2014 he has been afforded some employment duties at Akirix.

23. Jack Lewis resides in Weber County.

---

1 A contractually related entity to Akirix is Midnight Managements Services Group, LLC ("MMSG"). MMSG is a service company that, under contract, employs people to work for Akirix. MMSG also provides managerial services to Akirix, also under contract. Nada Lewis is and always been the only member. Jack disavowed any interest in MMSG. Plaintiffs deny that he ever had any interest in MMSG in the first place.

## JURISDICTION AND VENUE

24. Jurisdiction and venue are appropriate in this Court pursuant to Utah Code Ann. §§ 78A-5-102 & 78B-6-401, and Utah Code Ann. §§ 78B-3-301, -304 and/or -307, respectively.

25. Jurisdiction by consent over the United States Department of Treasury (Bureau of Internal Revenue Service) in this civil state court action is proper pursuant to 28 U.S.C. § 2410.

26. The amount at issue in this action qualifies it for Tier 3 discovery under Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## GENERAL ALLEGATIONS

**A. The Nominee Strategy.**

27. On or about August 1, 2010, Jack Lewis entered into an oral agreement with his brother Larry Lewis to act as a nominee ("Nominee Agreement").[2] This Nominee Agreement required Jack to hold, for the benefit of Larry, all of Larry's real property and Larry's ownership interest in various legal entities, including Akirix and other Nominee Companies.

28. Accordingly, Larry put various assets (real and personal) and his ownership interest in several entities in the name (as nominee only) of his younger brother, Jack Lewis. On all company filings, company papers (e.g., certificates of organization, operating agreements, etc.) and company bank accounts, Jack Lewis appeared "on paper" as the owner/member when, in reality, Jack was only Larry's nominee. This strategy is hereinafter referred to as the "Nominee Strategy" and the various papers that bear the name of Jack A. Lewis, the nominee, are hereinafter referred to as the "Nominee Papers."

29. All of the Nominee Papers were a sham. Larry was at all times the actual owner of Akirix and the Nominee Companies.

---

2 In the alternative, the Nominee Agreement may have created a constructive trust or fictitious trust in favor of Larry Lewis.

30. In exchange for allowing his name to be used in the Nominee Papers, and as part of the Nominee Strategy, Jack agreed to accept 10% of Larry's earnings, with Larry retaining the remaining 90%. Jack has held, as Larry's nominee and under the Nominee Agreement and the Nominee Papers, the shares, ownership and membership interest exclusively belonging to Larry in several companies, including nominally holding Larry's 86% membership in Akirix, which could only be exercised per Larry's directions and permission.

31. In a nominee agreement scenario, such as the one at issue here, one person (the nominee) appears to be the face of ownership (*e.g.,* the nominee is the mere title holder of property or shares of a company) while the transferor remains the real owner. Importantly, while the nominee is usually paid some agreed consideration, the actual rights and obligations – the ultimate ownership benefits – still belong to the actual member/owner. Of course a nominee agreement can be terminated.

32. The Nominee Papers and functions related thereto – from the Operating Agreement, bank filings, corporate filings, and managerial roles and titles – are based entirely on the nominee relationship between Larry and Jack.

33. The minority shareholder, Roland, holds a 14% membership interest in Akirix.[3]

34. Significantly, at all times subsequent to the creation of the Nominee Strategy, Larry retained actual majority ownership and actual management of Akirix, notwithstanding any claims to the contrary in the Nominee Papers.

35. Jack knew and understood the foregoing, namely that actual ownership and authority – and hence all decision-making authority – rested with Larry and all substantive

3 None of Roland's interests in Akirix were ever subject to the Nominee Agreement referenced herein.

decisions were made by Larry. And, until 2019, Jack acted consistently with his position as Larry's nominee, as described herein.

36. As part of the Nominee Strategy, in about 2014 (after Jack's employment as a dispatcher for the highway patrol was terminated), Akirix agreed to hire Jack as an employee (Jack was previously not an employee of Akirix nor was he ever an owner, manager or member, only a nominee).

37. Indeed, Jack was hired as an employee only with the approval and at the direction of Larry. Larry (not Jack) set Jack's salary. Larry made decisions about providing training and education to Jack (paid for by Akirix). And Larry decided the extent of responsibilities Jack would exercise as compliance officer.

38. Apart from Jack's $3,000/month salary as compliance officer (set and authorized by Larry), any money that was paid to Jack was paid based upon a percentage (approximately 10%) of Larry's ownership interest in Akirix and related entities associated with the Nominee Agreement and the Nominee Strategy. Larry also decided when distributions were made and in what amount. Jack, of course, had no input regarding distributions.

39. Pursuant to the Nominee Strategy, the financial arrangement that Jack agreed to is called the "90/10 split" and other similar names to that effect.

40. Personal bank accounts and debit cards were also set up to facilitate the "90/10 split." All such accounts were set up based upon the Nominee Agreement and the Nominee Strategy.

**B. Akirix's Business.**

41. Currently, there are only two owners/members of Akirix: Larry and Roland. They are the builders, operators, and principal driving force behind Akirix. Roland provides the unique

technological genius that lead to the creation in the software development that is the Platform for Akirix (hereinafter the "Akirix Platform").

42. From its inception, Roland and Larry together developed and built the Akirix Platform. Akirix specializes in providing escrow services by securing transactions for its member-based clients. Akirix accomplishes these escrow services through proprietary software, the Akirix Platform.

43. A new Akirix client is provided with access to a secure online portal where they may access their account within the Akirix Platform for the purpose of escrow services. A new Akirix client account is provided with funding instructions, including the deposit bank account number/routing number of the Akirix US bank account. In addition, a new Akirix client is provided an account number on the Akirix Platform. This business niche (VOIP wholesale) was identified and developed by Larry; Jack has no experience in this arena.

44. The typical escrow on the Akirix Platform generally follows a 5-step process:

a. Upon deposit of money by a client (generally a buyer) in Akirix's bank account, the money is credited within the Akirix Platform to the buyer's account. Akirix clients can utilize the account to facilitate secure transactions with other Akirix members on the Akirix Platform.

b. A project between the buyer and supplier is established, and the terms are transmitted to Akirix.

c. A buyer commits funds from their Akirix account balance to the project, locking the funds in a secure escrow.

d. After goods and/or services have been delivered by the supplier pursuant to the escrow terms, the invoicing is completed on the Akirix Platform and the buyer's funds in the secure escrow are released to the supplier's Akirix account.

e. The supplier may then withdraw funds by submitting wire details to Akirix. Upon review and approval of the wire information, funds are processed through the Akirix bank account.

45. Akirix also provides escrow dispute resolution services. Disputed funds are held in escrow until the dispute is resolved.

46. As Roland developed the Akirix Platform, Larry contacted his business contacts throughout the world to secure clients who needed the services offered by Akirix, and who would transact business on the Akirix Platform. Fully 100% of the clients that have or that now exist on the Akirix Platform were secured by and through Larry's efforts and contacts.

47. Larry and Roland, in essence, operate and manage the day-to-day duties of Akirix. Larry has hired, built and oversees an administrative staff that has a singular purpose of serving the clients. Likewise, Roland has recruited and hired IT professionals to maintain, upgrade and improve the Akirix Platform. Jack has never had the authority to hire/fire employees at Akirix.

48. Due to the tireless efforts of Larry and Roland, the success enjoyed by Akirix and the related companies finally allowed Larry the opportunity to address the long-standing tax issue that had burdened him for years.

**C. Related Companies Participating in the Nominee Strategy.**

49. Akirix has business and contractual relationships with several other companies as part of its business model.

50. These related companies were part of the Nominee Strategy implemented by Larry.

51. Nominee Papers were filed and/or recorded as to each of these related entities that showed Jack Lewis in a position that he only held because he was a nominee for Larry.

52. Jack Lewis did not have any actual ownership interest in Akirix or any of the related entities notwithstanding the facial claims of the Nominee Papers, which were, of course, subject to the Nominee Agreement and the Nominee Strategy.

53. Accordingly, whenever the name "Jack A. Lewis" appears on any Nominee Document, the name Larry Lewis should be substituted. After all, Jack was only ever Larry's nominee, and could not act without Larry's permission and authorization as actual owner.

OCP LLC

54. OCP LLC ("OCP") was organized in March 2014 as a Utah limited liability company.

55. OCP was used pursuant to the Nominee Strategy to acquire certain real property located in Weber County, Utah.

56. Consistent with the Nominee Strategy, Nominee Papers were drafted, recorded, and filed.

57. However, notwithstanding the Nominee Papers, Larry has always been the owner of OCP.

58. OCP owns the real property and the building in which Akirix operates. The real property is located at 1085 Wall Avenue, Ogden, Utah 84404. The legal description of this property is as follows:

> Part of the Northwest quarter of Section 20, Township 6 North, Range 1 West, Salt Lake Base and Meridian, U.S. Survey: Beginning at a point on the

West line of Wall Avenue, in Ogden City, Utah, South 0°58' West 952.01 feet and North 89°02' West 403.92 feet, more or less, from the Northeast corner of said quarter section, and running thence North 89°02' West 200 feet; thence North 0°58' East 85 feet; thence South 89°02' East 200 feet to Wall Avenue; thence South 0°58' West 85 feet to the point of beginning.

Less and Excepting therefrom: That portion disclosed by that certain Warranty Deed recorded October 11, 2007 as Entry No. 2297667 deeded to the Utah Department of Transportation for widening of Wall Avenue.

Tax Id. No. 121180016 (the "Property")

59. In 2013, OCP purchased the Property through Jack, Larry's nominee.

60. Consistent with the Nominee Agreement, and Larry's ownership interest and managerial control, the purchase agreement was completed by Larry, but in Jack's name.[4]

61. Also consistent with the Nominee Agreement, the funds to purchase the Property were paid by Akirix,[5] not Jack.

62. On March 6, 2015, Jack recorded a quitclaim deed that conveyed the Property from himself to OCP (with himself as owner), with a life estate interest reserved for himself.

63. Jack lacked authority, as nominee, to convey to himself a life estate interest in the Property. To the extent there was the reservation of a life estate, such an interest would have been created and held for Larry.

64. Indeed, except as nominee, Jack never has had any right or interest in the Property.

<u>Kurious, LLC</u>

---

4 The signatures for Jack were made by a stamp that Larry possessed and was authorized to use (after all, Jack was his nominee). Jack did not sign the Real Estate Purchase Contract himself. At Larry's direction, Jack did sign all the closing documents consistent with the Nominee Strategy.

5 Subsequently, a promissory note was executed by and between Akirix and OCP with respect to the Property. OCP leases the building to Akirix.

65. On October 18, 2018, Kurious, LLC ("Kurious") was organized as a Utah company.

66. Kurious is a company affiliated with Akirix that invests in the development and production of CBD oil.

67. Consistent with the Nominee Strategy, Nominee Papers were drafted and filed.

68. However, Larry has always been the owner of Kurious.

LLC Investment Holdings, LLC

69. On December 27, 2013, LLC Investment Holdings, LLC ("LLC Holdings") was organized as a Utah limited liability company.[6]

70. LLC Holdings was used to manage the self-insurance funds that were in place to meet the liability demands of the banking industry for Akirix's business model.

71. Consistent with the Nominee Strategy, Nominee Papers were drafted and filed.

72. However, Larry has always been the owner of LLC Holdings.

Other Miscellaneous Entities

73. Click Tribe, LLC, Capital L, LLC, and Xirix LLC were also organized as related and affiliated entities to Akirix.

74. None of these entities has conducted any business.

75. However, consistent with the Nominee Strategy, Nominee Papers were drafted and filed for each entity.

76. Larry is the owner of Click Tribe, LLC, Capital L, LLC, and Xirix LLC

6 Again, LLC Holdings was organized and began operating when Jack Lewis still an employee of the highway patrol, and not employed or otherwise affiliated with Akirix, except as Larry's nominee.

77. Together, all of these entities (Akirix, OCP, Capital L, Kurious, LLC Holdings, Click Tribe and Xirix) are sometimes collectively referred to herein as the "Nominee Companies."

**D. The Time Comes to Disclose and Terminate the Nominee Agreement.**

78. With the success of the Nominee Companies, Larry began taking steps to disclose his assets, to pay his tax obligations, and to enter discussions with the I.R.S.

79. Doing so meant that Nominee Strategy had to be disclosed and terminated.

80. This case arises because, driven by greed, Jack Lewis has attempted to seize control of Akirix and several of the Nominee Companies, including client and company funds of Akirix, has claimed a right to demote and/or fire key employees, and in March and/or April 2019 took and/or moved large sums of money belonging the Company to his personal control.

81. Jack has done so brazenly at the exact moment in time when Akirix has become successful and profitable – and cash or streams of revenue are finally available.

82. The purpose of Jack's actions was to "hold hostage" Akirix's funds, and to force an exit settlement with Larry Lewis, Akirix, and the Nominee Companies from his nominee relationship.

83. Indeed, Jack's actions were sparked when he learned that Larry had personally retained counsel to assist him in approaching the I.R.S. about prior and ongoing tax obligations, including disclosure of the nominee relationship with Jack. Jack's concern, of course, is that there is established law that allows the I.R.S. potentially to attach assets held in Jack's name, and also the potential that the I.R.S. would audit Jack's affairs.

84. As a result of his efforts to try and hold on to the now-terminated nominee relationship, Jack violated Akirix's protocol established with the banks and took personal control of approximately $2 million (or more) in Akirix accounts or assets.

85. At no time did Jack consult with Roland, the minority shareholder, concerning these plans or the consequences that they might have on the business.

86. Jack took personal control of the Akirix accounts by falsely asserting that his role was a true owner, and not that of a nominee, even though Jack is unqualified to operate Akirix and has no actual or historic right to do so.

87. Indeed, Jack Lewis has made statements that he understands he is a mere nominee, not an actual owner. Thus, the money-grab by Jack Lewis was implemented to gain leverage (without regard for the welfare of Akirix, its employees, or any of the related Nominee Companies).

88. Moreover, Jack Lewis's lack of involvement further illustrates that he is not a member/owner of the Company, and he knows it. In the months leading up to March 2019, Jack was out of the country and not directly involved in the operations of Akirix, and since March 2019, Jack has been completely absent from Akirix's offices (other than to obtain a bank FOB on a Saturday when no one was around, as described below).

89. Jack knows that he was always just a figurehead for the Nominee Strategy and that Larry and Roland are, and always have been, the driving force behind Akirix's success.

90. Nevertheless, in his March 2019 money-grab of Akirix's assets and accounts and the take-over of Akirix's management, Jack was oblivious and/or indifferent to the fact that his actions would cause severe harm to Akirix, permanently injure client relations, and start a cascade of other irreparable harm.

91. Jack does not have an understanding of Akirix, its software, the industry, its customers, or the banking relationships necessary to run the Company. At the time of his attempted coup, employees essential to the proper operations of Akirix were terminated by Jack or resigned (or threatened to resign).

92. Most tellingly, Jack's secret conduct violated Akirix and banking policies. As an important security measure, and as required by the banks holding Akirix accounts, Akirix has a two-person authentication process designed to prevent any one person from accessing Akirix's accounts. Jack willfully, intentionally, and wrongfully circumvented that security measure.

93. After hours (a Saturday), Jack entered the Akirix offices, alone, and searched the premises, including the desks of company officers, until he was able to locate the FOB of a former employee.

94. Jack subsequently accessed the bank accounts using his FOB and the assistance and stolen FOB of a former employee who had recently resigned.

95. Jack had no authority to perform any of these actions.

96. On or about March 27, 2019, after draining all operational, savings and fee accounts associated with Akirix, Jack informed Larry (through legal counsel) that Jack desired to terminate the Nominee Agreement. Instead of seeking an accounting, Jack took the position for the first time since Akirix was founded that he was the true owner of Larry's 86% ownership in Akirix. Armed with this unfounded and legally unsustainable claim as an owner of Akirix (and holding hostage approximately $400,000+ in cash, and later improperly seizing another $1.7 million in cash and other assets), Jack had his attorney personally serve letters purporting to terminate certain employees or managers and locking out administrative access to the Akirix accounts from the true owners.

97. Jack's claim, of course, was premised on the Nominee Papers, which everyone knew did not reflect reality and had not reflected reality for the eight years of Akirix's existence. Everyone, including Jack, knew the Nominee Papers were a sham.

98. The reality is that Larry is the 86% majority owner of Akirix (with Roland as 14% owner), Larry is the owner of the Nominee Companies, and Larry is Jack's brother. Jack has used this relationship and his nominal position in the Company to seek an exorbitant pay-out based on personal threats against Larry and his wife, and threats of destruction to Akirix and the Nominee Companies. Primarily, Jack now challenges the Nominee Agreement with Larry that Roland, the Nominee Companies, and their employees have relied on and followed – and never disputed – for more than eight years.

99. Jack is – and always has been – merely a "nominee" holder of Larry's ownership interests in Akirix and the Nominee Companies. Nothing more. Larry is the founder and majority owner of Akirix and the Nominee Companies. As a "nominee," Jack has no personal ownership of any of these entities; rather, he is subject to a personal agreement with Larry. Larry is and always has been the true owner. Jack historically had a 90%-10% split in favor of Larry of monies distributed by Akirix and the Nominee Companies to Larry.

100. As previously alleged, Roland is the undisputed 14% minority owner. However, Jack's self-dealing, mismanagement, and destruction of Akirix has harmed and threatens to irreparably harm Akirix and destroy Roland's ownership interest and years of hard work. Jack's recent actions have completely disregarded any conceivable fiduciary duties to Roland. Roland brings – in the alternative – direct and derivative damage claims against Jack to stop imminent and irreparable harm to Akirix and to protect Roland's personal interest.

101. In short, Jack has attempted to hold hostage the Nominee Companies unless and until his demands are met. And the tactics employed by Jack are specifically intended to inflict the most severe harm possible – including irreparable harm.

102. As described herein, once Jack learned that Larry intended to use assets and future member distributions from an operational company (Akirix) to satisfy a long-standing personal debt with the I.R.S., and that Larry was discontinuing any fiction under the Nominee Agreement and relationship, Jack panicked.

103. Unwilling to accept the discontinuation his fictional control, Jack now seeks leverage against Larry by accessing Akirix accounts, seeking to terminate employees, sabotaging the utility service of OCP which owns the building in which Akirix operates, and seeking to destroy the future business operations of Akirix and the Nominee Companies.

104. From April through August 2019, the parties attempted to resolve their dispute in good faith, but have been unable to reach a settlement.

105. During that time, Akirix has suffered harm to its business as a direct result of Jack Lewis' actions. Jack has refused to allow the funds taken and held personally by him to be used for Akirix's purposes, including employee salaries and other ordinary and necessary purposes under the circumstances.

106. On or about September 4, 2019, the true members of Akirix and several of the Nominee Companies held a meeting of the members, made appropriate corporate filings with the State of Utah, and made proper and formal application for the release of funds taken by Jack Lewis. Nevertheless, Jack Lewis still claims to be owner and manager of Akirix based on the Nominee Papers; therefore, a dispute exists that needs to be resolved by the Court.

**E. I.R.S.'s Tax Lien Versus Jack Lewis's Claims to Nominee Companies.**

107. As discussed herein, the Nominee Strategy was created, in part, to deal with Larry's tax obligations to the federal government.

108. Pursuant to 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

109. The United States government recorded Federal Tax liens against Larry Lewis as follows:

a. On December 6, 2011, the Department of Treasury, Internal Revenue Service, filed and duly recorded a notice with the County Recorder in Weber County, Ogden, Utah, 84401. The notice was prepared and signed for I.R.S. manager Tammy Ward, in Seattle, WA. The notice identifies "a lien in favor of the United States on all property and rights to property belonging to this taxpayer…." The Form 668(Y)(c) identifies the "area" as "Small Business / Self Employed Area #6."

b. On September 30, 2013, the Department of Treasury, Internal Revenue Service, filed and duly recorded a notice with the County Recorder in Weber County, Ogden, Utah, 84401. The notice was prepared and signed for I.R.S. manager Anne T. Brown, in Seattle, WA. The notice identifies "a lien in favor of the United States on all property and rights to property belonging to this taxpayer…." The Form 668(Y)(c) identifies the "area" as "Small Business / Self Employed Area #5."

110. It is well-established that vesting formal title to a taxpayer's property or rights to property in the taxpayer's alter ego or nominee will not place the property outside the reach of a § 6321 lien.

111. Accordingly, to the extent that Larry Lewis has property or rights to property in or arising from the Nominee Companies, federal tax liens may attach thereto. As set forth above, Jack Lewis is claiming ownership of certain Nominee Companies, the assets within those companies, and/or the proceeds of the Nominee Companies ("Nominee Proceeds and Property").

112. The claims of Jack Lewis are contrary to the potential lien interests of the I.R.S.

113. Because Jack A. Lewis's claims are entirely premised on the Nominee Strategy and the Nominee Papers, his claims fall to the lien rights of the I.R.S. (whether by constructive trust, fictitious trust, fraudulent transfers, oral agreement, nominee transactions, or other invalidating grounds, etc.).

114. The lien rights of the I.R.S. to the Nominee Proceeds and Property are superior to any claim that Jack Lewis may have in any Nominee Company pursuant to the Nominee Strategy.

115. There exists a judiciable controversy as to the Nominee Proceeds and Property, which requires this Court to determine the rights and ownership interests of the parties.

**F. Facts Regarding the Interpled Property.**[7]

116. In consideration of the potential rights of the I.R.S., the Nominee Proceeds and Property, and the competing claims of Larry Lewis and Jack Lewis, Akirix has filed this action in the nature of an interpleader naming the I.R.S. as a necessary party.

---

7 This case is in the "nature of an interpleader." 28 U.S.C. § 2410. Therefore, while no specific property is begin interpled to the Court, the ownership interests in Akirix, the Nominee Companies, and the Nominee Proceeds and Property are at issue.

117. The property in which the I.R.S. may have a lien or other interest exceeds $1 million.

118. Larry Lewis claims an interest in the Interpled Property and denies that Jack has any rights thereto.

119. For the avoidance of doubt, by filing this action in the nature of an interpleader, Larry Lewis is not waiving or abandoning his claims or rights to the Interpled Property, but is merely seeking the assistance of the Court to determine who has right, title or interest to the Interpled Property. Larry Lewis believes he has all right, title, and interest to the Interpled Property, subject only to a possible § 6321 lien of the I.R.S.

120. A justiciable controversy exists between Larry, Jack, and the I.R.S. as to the Interpled Property, which requires this Court to determine the rights and ownership interests of the parties as to the Interpled Property.

## FIRST CAUSE OF ACTION

**(Claim in the Nature of Interpleader against Internal Revenue Service)**

**(28 U.S.C. § 2410 & 26 U.S.C. § 6321)**

121. Plaintiffs incorporate the foregoing paragraphs as though set forth fully herein. Plaintiffs further incorporate each of the following enumerated causes of action (and allegations therein) as though set forth fully herein.

122. By sovereign consent, 28 U.S.C. § 2410 authorizes any person to name the United States (here, the I.R.S.) as a party in civil litigation in state court in certain actions where interests of the I.R.S. (such as tax liens or similar interests) may be affected by the outcome of the litigation.

123. The provisions of 28 U.S.C. § 2410 are pleaded with specificity and satisfied because this court has subject matter jurisdiction over the parties' disputes and the competing claims related to real and personal property owned by Larry Lewis which, by this action, are presented "in the nature of interpleader" and directly related to I.R.S. liens and interests.

124. In addition, and alternatively, this action raises claims to quite title and for a declaration (or partition) ownership of personal and real property in which the I.R.S. has an interest.

125. In addition, and alternatively, Jack Lewis effectively seeks to "foreclose" the liens or interests of the United States through his defenses and claims in this action – including Jack's claim of sole ownership of property to which the United States otherwise has an existing interest.

126. Consequently, the inclusion of the United States and I.R.S. is necessary "for the protection of the United States" (28 U.S.C. § 2410(a)) and of its interests in property, business ownership, and other assets at issue in this litigation.

127. Larry Lewis had, at all relevant times, a tax debt with the I.R.S.

128. His brother Jack, at all relevant times, was aware of the fact of Larry's debt and of the lien or other interests that the I.R.S. would have on property, assets, or ownership held interests in Jack's name for Larry's benefit.

129. Jack intended and took steps to obscure the true ownership interests of Larry from the I.R.S., and to personally profit thereby.

130. Pursuant to 26 U.S.C. § 6321, the United States (through the I.R.S.) has a "lien" upon "all property and rights to property, whether real or personal, belonging to such persons," including Larry Lewis or his nominee-brother Jack Lewis. Such property exceeds $1 million in value.

131. Pursuant to broad I.R.S. authority, a person who takes property knowing that the I.R.S. has a lien or other interest on property, is imputed to have "notice" of the I.R.S.'s senior lien on the property, including related assets or proceeds, whether or not a notice of lien is ever filed. As set forth below, however, actual Notices of Federal Tax Lien were recorded in Ogden, Utah, where both Larry and Jack resided.

132. The I.R.S. also has far-reaching authority to pierce a nominee relationship and the formalities or documents upon which that relationship is based.

133. Pursuant to 28 U.S.C. § 2410(b), the address of the taxpayer, Larry Lewis, is 174 North 2550 West, Ogden, Utah 84404.

134. Pursuant to 28 U.S.C. § 2410(b), the address of the taxpayer's nominee, Jack Lewis, is 1647 20th Street, Ogden Utah 84401.

135. Tax assessments were made by the I.R.S. against Larry Lewis as follows:

a. For tax year 2004, assessments dated October 24, 2005 and May 21, 2012.

b. For tax year 2005, an assessment dated February 23, 2009.

c. For tax year 2006, an assessment dated May 21, 2012.

d. For tax year 2007, an assessment dated August 23, 2010.

136. In addition to any tax lien created by law, 26 U.S.C. § 6321, the following specific Notices of Federal Tax Lien have been recorded against Larry Lewis:

a. On December 6, 2011, the Department of Treasury, Internal Revenue Service, filed and duly recorded a notice with the County Recorder in Weber County, Ogden, Utah, 84401. The notice was prepared and signed for I.R.S. manager Tammy Ward, in Seattle, WA. The notice identifies "a lien in favor of the United States on all

property and rights to property belonging to this taxpayer…." The Form 668(Y)(c) identifies the "area" as "Small Business / Self Employed Area #6."

b. On September 30, 2013, the Department of Treasury, Internal Revenue Service, filed and duly recorded a notice with the County Recorder in Weber County, Ogden, Utah, 84401. The notice was prepared and signed for I.R.S. manager Anne T. Brown, in Seattle, WA. The notice identifies "a lien in favor of the United States on all property and rights to property belonging to this taxpayer…." The Form 668(Y)(c) identifies the "area" as "Small Business / Self Employed Area #5."

137. On or about September 13, 2019, Larry Lewis filed Form 433-A with the I.R.S. in furtherance of his discussions with the I.R.S. The Form 433-A also referenced the interests, the dispute, the contested property, and the nominee relationship described herein.

138. The submission of Form 433-A and its disclosures is consistent with Larry Lewis' intentions and efforts to seek to resolve tax obligations, including other earlier communications with the I.R.S. in 2019.

139. After learning that Larry desired resolution with the I.R.S. in early 2019 (or in 2018), Jack planned and thereafter took retaliatory and drastic actions in March 2019 and April 2019 to move funds into his personally controlled account, and to cause harm to Larry, Akirix and other Nominee Companies. In so doing, Jack sought to force a severance and to forestall Larry's communications with the I.R.S. by making funds unavailable to Larry or the I.R.S. Jack realized that his prior profit stream flowing from the Nominee Agreement could be cut off by revealing to the I.R.S. the true nature of Larry's ownership, which also could subject Jack to further I.R.S. personal scrutiny surrounding the Nominee Agreement.

140. Federal law allows the I.R.S. to pierce any strawman ownership arrangements or nominee claims, such as the Nominee Agreement between Larry and Jack Lewis alleged in this case. In such a situation, the I.R.S. may not be constrained by purported ownership documents, title records, operating agreements, organizational documents, or other contract provisions – such as the Nominee Papers here. Instead, the I.R.S. may look "under the hood" as it assesses the realities of the relationships and business interests to determine the true nature of the ownership interests in question, including the Nominee Agreement and the Nominee Strategy alleged herein.

141. In short, the I.R.S. may disregard Jack's ownership claims based on Nominee Papers. As such, there are competing ownership interests submitted to this Court for resolution, which are in the nature of an interpleader.

142. Accordingly, by statute, the I.R.S. is a named Defendant and a necessary party to each of the following causes of action.

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment – All Plaintiffs and Parties)**

143. Plaintiffs incorporate by reference all of the foregoing paragraphs and allegations as if fully set forth herein.

144. Under the Nominee Agreement, Jack Lewis has been acting for years as a mere nominee for Larry Lewis.

145. The purported membership interest of Jack Lewis is, in reality, held in a nominee capacity for Larry Lewis.

146. Jack's purported status as manager of Akirix is, in reality, held as a nominee for Larry Lewis.

147. Jack's purported status as owner of any real property is, in reality, held as nominee for Larry Lewis.

148. At no time, was Jack Lewis an actual, bona fide member or manager of Akirix.

149. At no time was Jack Lewis an actual, bona fine member or manager of any of the Nominee Companies.

150. Larry Lewis has continuously exercised ownership and managerial control over Akirix and the Nominee Companies even though the membership interest and managerial title were in Jack Lewis's name pursuant to the Nominee Agreement and the Nominee Strategy.

151. Jack Lewis paid little or no monetary payments for the membership interest in Akirix or the Nominee Companies, and made little or no contributions to the start-up and success of Akirix as a financial technology company.

152. Larry Lewis has, at all relevant times, continued to enjoy the benefits of the membership of Akirix and the Nominee Companies while the membership interest was is in Jack's name. Jack has enjoyed the benefits of his performance as a nominee.

153. The same Nominee Agreement and arrangements controlled the other Nominee Companies named herein. For each of these entities, Larry Lewis was the actual manager and owner of the membership interests with respect to each of the Nominee Companies. Jack was only Larry's nominee.

154. Consequently, there exists a dispute concerning the Nominee Agreements and, more specifically, over the authorized management and ownership of Akirix and the Nominee Companies.

155. Roland specifically asserts that he has personal knowledge that Larry Lewis is the actual member/owner of Akirix, and the actual manager with decision-making authority. Akirix

has operated in this fashion long before Jack Lewis was invited to join as an employee and thereafter.

156. Roland and Larry Lewis both have a cognizable interest in the resolution of this dispute, as it affects their personal interests and the ongoing viability and success of Akirix and the Nominee Companies.

157. The Court should declare that Jack Lewis is a mere nominee for Larry Lewis and that Jack Lewis is not an actual member or manager of Akirix or any of the Nominee Companies. The Court should declare the terms of the Nominee Agreement, including that Larry Lewis was entitled to terminate the 90/10 Nominee Agreement when circumstances and finances warranted it, such as in an effort to reconcile with the I.R.S. And as may be appropriate or pleaded by the I.R.S., the court should determine the I.R.S.'s interest in the property and assets at issue here.

158. The Court should make such other declarations as may be necessary to resolve the parties' disputes alleged herein.

**<u>THIRD CAUSE OF ACTION</u>**

**(Tortious Interference – Roland Li v. Jack Lewis)**

159. Roland Li incorporates each of all of the foregoing paragraphs and allegations as if set forth herein.

160. Roland designed and built the financial technology software that lies at the core of Akirix.

161. Roland has been an undisputed member and owner of Akirix from day one, and remains active in developing complex banking and client software.

162. By the wrongful and malicious conduct described herein, Jack Lewis employed wrongful means to tortiously interfere with Roland's economic interests and expectations and his business contract with Akirix.

163. Jack's actions were purposeful to harm (if not destroy) Roland's economic interests and relationships.

164. Jack tortiously interfered with Roland's economic interests through improper means, including but not limited to hacking into Akirix accounts at Chase Bank; taking (without authorization) the FOB of a former employee from the CEO's office; holding Akirix funds hostage and refusing to allow the funds to be used for Akirix purposes; causing client relationships to be strained by attempting to fire employees and impede normal business operations; and by threatening to destroy Akirix if his demands were not met.

165. Jack's actions in accessing Akirix funds knowingly violated Akirix's two-person authentication policy and protocol; violated clear security measures thereby putting Akirix (and its clients) at risk; and violated banking protocols with Chase Bank, thereby misrepresenting the true nature of his after-hours transaction to Chase Bank.

166. Roland has been damaged by Jack's purposeful conduct and improper means in an amount to be determined at trial.

167. Jack's actions were willful, malicious and reckless such that an award of punitive damages is appropriate.

## <u>FOURTH CAUSE OF ACTION</u>

**(Tortious Interference – Akirix v. Jack Lewis)**

168. Plaintiffs incorporate each of all of the foregoing paragraphs and allegations as if set forth herein.

169. Larry Lewis and Roland Li are the rightful and actual members and decision-makers for Akirix.

170. Defendant Jack Lewis sabotaged and tortiously interfered with the business and economic relations of Akirix.

171. Jack purposefully engaged in improper means, as alleged herein, including but not limited to taking the FOB key of a former employee without access; using the former employee's FOB to gain improper access to company accounts; knowingly circumventing company policies and procedures in taking company accounts for personal purposes; holding "hostage" the funds in an effort to coerce and threaten Akirix into a severance or settlement; refusing to allow the company accounts to be used for ordinary business purposes; purporting to terminate employees and managers; and changing banking access and locking out Akirix from accounts.

172. Jack's wrongful conduct and improper means caused severe and foreseeable damage to Akirix, including damage to its business, revenues, client relationships, banking relationships, business reputation, and future expected profits.

173. Akirix has been damaged by Jack's purposeful conduct and improper means in an amount to be determined at trial.

174. Jack's actions were willful, malicious and reckless such that an award of punitive damages is appropriate.

## FIFTH CAUSE OF ACTION

**(Breach of Fiduciary Duty – Akirix, Roland Li and Larry Lewis v. Jack Lewis)**

175. Plaintiffs incorporate each of all of the foregoing paragraphs and allegations as if set forth herein.

176. While never a member, years after Akirix was formed Jack Lewis was hired as an employee. Over time, Jack Lewis was given additional responsibility as a compliance officer, including the ability to access Akirix's bank accounts (subject to compliance and banking protocols, including the two-person authentication requirement).

177. In this employment capacity described above, Jack owed a fiduciary duty of loyalty and care to Akirix.

178. Jack breached his fiduciary duties in wrongfully accessing and transferring funds to accounts personally controlled by himself, and by cutting off access of others at Akirix to the funds.

179. Jack's breach of fiduciary duties purposefully caused severe and foreseeable damage to these Plaintiffs, and specifically to Akirix, including damage to its business, revenues, client relationships, banking relationships, business reputation, and future expected profits.

180. Jack's actions were willful, malicious and reckless such that an award of punitive damages is appropriate.

**SIXTH CAUSE OF ACTION**

**(Conversion – Akirix v. Jack Lewis)**

181. Plaintiffs incorporate each of all of the foregoing paragraphs and allegations as if set forth herein.

182. As set forth herein, Jack Lewis wrongfully converted, took, appropriated and transferred to his personal control monies that did not belong to him.

183. Jack's actions were unauthorized and not justifiable.

184. Akirix was damaged by Jack's conversion of funds, as alleged above.

185. Jack's actions were willful, malicious and reckless such that an award of punitive damages is appropriate.

**SEVENTH CAUSE OF ACTION**

**(Quiet Title – All Plaintiffs v. Jack Lewis)**

186. Plaintiffs incorporate each of all of the foregoing paragraphs and allegations as if set forth herein.

187. Each of the Plaintiffs, including all of the entities named herein, seek an order quieting title as to ownership, including membership ownership in each entity.

188. As part of this cause of action, OCP specifically also seeks an order quieting title to the building and real property it owns.

189. The Court should enter an order removing from public and private records any ownership interest in favor of Jack Lewis.

**EIGHTH CAUSE OF ACTION**

**(Wrongful Lien – OCP and Larry Lewis v. Jack Lewis)**

190. Plaintiffs incorporate each of all of the foregoing paragraphs and allegations as if set forth herein

191. Jack Lewis has placed a wrongful lien (a purported life estate interest that is groundless and materially false) on the OCP building. OCP and Larry Lewis demanded that the lien be removed, including as required under U.C.A. § 38-9-203.

192. Jack knew when he recorded the wrongful lien that it was groundless and contains material misstatements regarding authority with respect to the Property and his ownership of a life estate.

193. Plaintiffs OCP and Larry Lewis have been damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**

**(Alternative Claim: Derivative Action – Roland Li and Akirix v. Jack Lewis)**

194. Plaintiffs incorporate by reference all of the foregoing paragraphs of its Complaint as if fully set forth herein. This claim is pleaded by Roland Li in the alternative.

195. Roland Li is one of two members of Akirix.

196. To the extent that Jack is the manager of Akirix, then Jack owes fiduciary duties to Akirix (duties of care, loyalty, and good faith) and to the minority member, Roland, to run and manage Akirix in a reasonable and prudent manner, subordinating his own personal interests to the needs of Akirix, and, in all other ways, acting with complete loyalty and fidelity to Akirix. These duties also include, but are not limited to, a duty to protect and preserve Akirix's clients, assets, and goodwill.

197. Jack's conduct and actions, as set forth above, have breached his fiduciary duties to Akirix and to Roland as a minority member of Akirix. Jack has exploited his power as manager and engaged in conduct to the disadvantage of Akirix and its members, including Roland Li.

198. As a proximate result of Jack Lewis' breach of the fiduciary duties owed to Roland, Roland has suffered damages and continues to suffer damages, in an amount to be proven at trial.

199. As a proximate result of Jack Lewis's knowing and willful self-dealing, as well as his diversion of Akirix monies and assets for his own benefit, Roland is entitled to punitive damages.

## TENTH CAUSE OF ACTION

**(Unjust Enrichment)**

200. Plaintiffs incorporate by reference all of the foregoing paragraphs of its Complaint as if fully set forth herein. This claim is pleaded by Roland Li in the alternative.

201. Under the totality of circumstances, it would be unjust for Jack Lewis to retain the money, gains and assets accumulated by virtue of the Nominee Agreement, by the Nominee Strategy, and by the Nominee Papers.

202. The Court should consider the entire history and course of conduct of the companies, including their development, strategic planning, and actual indicia of ownership, including the factors considered when piercing a nominee relationship.

203. Furthermore, Jack Lewis' actions in torpedoing Akirix and the Nominee Companies belie any claim that he is, or has been, the true owner of these interests.

204. Instead, Jack has demonstrated a willingness to kill Akirix and the Nominee Companies rather than candidly approach the I.R.S. about the parties' Nominee Agreement and historic dealings in which both Jack and Larry both willingly participated.

205. The Court should acknowledge the reality of the business dealings at issues here, including the liens or other interests of the I.R.S. Indeed, because the I.R.S. is a party to this action, the Court can equitably and fairly allocate interest to reflect reality.

206. A ruling from the Court under a theory of unjust enrichment further allows the parties and the United States the flexibility to move forward, acknowledging past mistakes, but allocating interest in a manner that is fair and equitable in an unusual case and an unusual procedural posture.

## ELEVENTH CAUSE OF ACTION

**(TRO/Preliminary Injunction and Permanent Injunction)**

207. Plaintiffs incorporate by reference all of the foregoing paragraphs of the Complaint as if fully set forth herein.

208. As set forth above, Jack Lewis has been acting as a mere nominee for Larry Lewis. The purported membership interest of Jack Lewis is, in reality, held as a nominee for Larry Lewis. The purported role as manager is, in reality, held as a nominee for Larry Lewis.

209. Jack has taken and controlled funds belonging to the Company and treating them as if they were his to use and enjoy.

210. Jack has terminated the managers and officers of the Company.

211. Jack has caused employees to quit.

212. Jack has deauthorized key employees and managers from the Company's accounts.

213. There exists a threat that Jack will continue this course of conduct, if not enjoined.

214. Jack does not know how to run the Company, manage the platforms, interact with the Customers, provide customer service or, in short, effectively manage or run the Company in any manner.

215. The Court should enter an injunction (i) enjoining Jack from acting as manager or representing to any party that he is a manager of Akirix or the Nominee Companies, (ii) enjoining Jack from accessing Akirix accounts or funds, or from have contact with Akirix's bank representatives, and with the same prohibitions applicable to the Nominee Companies; (iii) requiring Jack to remove himself as a signatory on any and all Akirix accounts and any Nominee Company accounts, (iv) requiring Jack to return any other funds he improperly transferred from

Akirix which have not been re-taken by Akirix, (vii) enjoining Jack from asserting membership of any interest in Akirix or any of the Nominee Companies.

216. Because Jack only was a mere nominee for Larry (as Jack knows and has admitted), Plaintiffs are likely to prevail on the merits of their claims against Jack.

217. Plaintiffs (Roland Li, Larry Lewis, and Akirix, LLC) will suffer irreparable harm unless an injunction is granted against Jack Lewis, as Jack has already diverted or inevitably will divert additional assets and will continue to allow Akirix to wither and become non-operational. Jack's self-dealing and other illegal, improper and unethical acts are jeopardizing the very existence of Akirix and its assets and the Nominee Companies.

218. Monetary compensation alone will not adequately compensate Plaintiffs for the harm that has and will continue to occur as a result of Jack's actions absent injunctive relief.

219. The balance of hardships between Plaintiffs and Defendant favors Plaintiffs because any injunction entered by the Court will not prevent Akirix from continuing to lawfully operate and will ensure that it is properly and duly managed by a neutral, former CEO/manager who is unrelated to either Jack or Larry. However, if an injunction is not granted, Plaintiffs will suffer harm that cannot be undone.

220. Issuance of the injunction will not adversely affect the public interest because enjoining Jack from engaging in self-dealing, from exploiting Akirix assets, from effectively running Akirix into the ground; rather, the injunction will preserve the viability and value of Akirix and the Nominee Companies for its members, and its employees.

221. As such, and pursuant to the Utah Rules of Civil Procedure 65A, Plaintiffs are entitled to a TRO, preliminary and permanent injunctive as described above. It is futile for Akirix and the Nominee Companies to bring this claim to Jack before pursuing it here in this

action since Jack is the alleged tortfeasor at issue in the claim and cannot reasonably be expected to act contrary to his own interests.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for relief against Jack Lewis as follows:

A. For a TRO and preliminary injunction, as pleaded above, followed by a permanent injunction upon entry of a judgment;

B. For a declaration of the parties' ownership and rights in Akirix;

C. Compensatory damages in an amount to be determined at trial.

D. Punitive damages in an amount to be determined at trial.

E. For such other and further relief and attorneys' fees as the Court deems just, equitable, and appropriate under the circumstances.

DATED this 19th day of September 2019.

BLACKBURN & STOLL, LC

/s/ Brett N. Anderson
Brett N. Anderson
Scott R. Taylor
200 South 257 East, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 578-3540
*Attorneys for Plaintiffs,*
*Roland Li (individually and*
*derivatively and directly*
*on behalf of Akirix, LLC);*
*Akirix, LLC, and other*
*Plaintiff entities*

RAY, QUINNEY & NEBEKER

/s/ John Mackay
John Mackay
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
*Attorneys for Plaintiff, Larry Lewis*

**VERIFICATION**

I, Roland Li, have reviewed the allegations of this First Amended Complaint and declare under the penalty of perjury under the law of the State of Utah that the above-listed allegations are true and correct to the best of my knowledge and belief.

/s/ You "Roland" Li
Roland Li

I, Larry Lewis, have reviewed the allegations of this First Amended Complaint and declare under the penalty of perjury under the law of the State of Utah that the above-listed allegations are true and correct to the best of my knowledge and belief.

/s/ Larry Lewis
Larry Lewis

## CERTIFICATE OF SERVICE

On September 19, 2019, I caused to be served a copy of the foregoing **VERIFIED FIRST AMENDED COMPLAINT** on the following persons in the manner indicated below at the following addresses:

Dusten Heugly
dheugly@ruddfirm.com

☑ by **CM/ECF**

Dated this 19th day of September 2019.

/S/ Brett N. Anderson

DEPARTMENT OF JUSTICE
JAN 14 2020
TAX DIV - RECORD

2020 JAN 10 AM 10: 24
11
MAIL REFERRAL UNIT
REFERRED