IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YOU "ROLAND" LI, individually and derivatively on behalf of AKIRIX L.L.C., a Utah Limited Liability Company; LARRY LEWIS, an individual; AKIRIX L.L.C., a Utah Limited Liability Company; KURIOUS, L.L.C., a Utah Limited Liability Company; LLC INVESTMENT HOLDINGS, L.L.C., a Utah Limited Liability Company,<br><br>                Plaintiffs,<br><br>v.<br><br>JACK LEWIS, an individual,<br><br>                Defendant,<br><br>INTERNAL REVENUE SERVICE, a Bureau of the DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA, a necessary party,<br><br>                Stakeholder. | MEMORANDUM DECISION AND ORDER GRANTING AND DENYING CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 1:20-CV-12 TS-PMW<br><br>District Judge Ted Stewart |
| AND ALL RELATED CLAIMS. | |

This matter is before the Court on Cross Motions for Partial Summary Judgment. For the reasons discussed below, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment.

I. BACKGROUND

This case arises from a dispute between two brothers, Plaintiff Larry Lewis ("Larry") and Defendant Jack Lewis ("Jack"), over an 86% ownership interest in Akirix, LLC ("Akirix").

Akirix assists international companies in conducting secured transactions across the internet.[1] Larry and Plaintiff Roland Li ("Roland") founded Akirix in 2011 and have grown it over the past nine years.[2] Roland is the undisputed owner of the remaining 14%.[3]

On or about August 1, 2010, Jack and Larry entered into an oral agreement whereby Jack would act as Larry's nominee ("Nominee Agreement").[4] Under the Nominee Agreement, Jack would hold, for Larry's benefit, all of Larry's real property and his ownership interest in various legal entities, including Akirix and other companies.[5] Larry put various assets in Jack's name.[6] For use of his name, Jack accepted 10% of Larry's earnings with Larry retaining the remaining 90%.[7]

Larry admits that he transferred the assets into Jack's name as part of a strategy to avoid pre-existing tax claims by the United States Internal Revenue Service ("IRS").[8] In Larry's words "if you can't trust your brother, whom can you trust."[9] Larry openly acknowledges that the Nominee Agreement was "ill-conceived [in] nature," and undertaken "to avoid or delay payment of federal taxes."[10] In short, Larry wanted to build Akirix without paying the IRS's claims.[11]

As part of the brothers' scheme to avoid tax-liability, Larry, Roland, and Jack executed Akirix's Operating Agreement ("OA") that contains an integration clause which states, "[t]his Agreement, and the Articles comprise the entire agreement among the parties with respect to the

---

[1] *See* Docket No. 25 ¶ 36.
[2] *See id.*
[3] *See id.* ¶ 16.
[4] *See id.* ¶ 3.
[5] *See id.* ¶ 4.
[6] *Id.*
[7] *See id.* ¶ 6.
[8] *See id.* ¶ 3.
[9] *See id.* at 103.
[10] *See id.* at 32, 36.
[11] *See id.* at 3.

Company. This Agreement supersedes the [sic] any prior agreements or understandings with respect to the Company. No representations, statements or conditions not contained in this Agreement or the Articles has any for or effect."[12] The OA issued approximately 86% of Akirix's membership units to Jack, and it issued approximately 14% to Roland. The OA issued no membership interest to Larry.[13]

Larry supports his ownership theory with declarations by various individuals that were familiar with the Nominee Agreement and attest to Larry's ownership interest.[14] Some of these same individuals also acknowledge Larry's tax liabilities.[15] Jack does not challenge the authenticity of Larry's allegations of a Nominee Agreement or the declarations that support Larry's ownership interest. Jack contends that the Nominee Agreement and Larry's other actions regarding Akirix are irrelevant because the OA names Jack as the 86% owner and the integration clause forecloses the possibility of an oral Nominee Agreement.[16] Accordingly, Jack moves for summary judgment on the basis that he is the named owner under the OA.[17] Larry filed for summary judgment on the grounds that the Nominee Agreement is void as a matter of law because it was used to defraud the IRS.[18] Larry also moves the Court to declare the OA void as a matter of law because it is the fruit of the illegal Nominee Agreement.[19]

---

[12] *See* Docket No. 34 ¶ 3.
[13] *Id.* ¶¶ 7–8.
[14] *See, e.g.,* Docket No. 25 ¶ 44.
[15] *See, e.g., id.* at 103.
[16] *See, e.g.*, Docket No. 6, at 1.
[17] *Id.*
[18] *See* Docket No. 25, at 2.
[19] *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[21] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[22]

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[23] "When the parties file cross motions for summary judgment, 'we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'"[24]

## III. DISCUSSION

As a preliminary matter, the United States of America filed a response to Plaintiffs' Motion for Summary Judgment and requested that the Court defer ruling on the Motion under Rule 56(d) of the Federal Rules of Civil Procedure.[25] Under Tenth Circuit law:

---

[20] Fed. R. Civ. P. 56(a).
[21] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).
[22] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).
[23] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).
[24] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *James Barlow Family Ltd. P'ship v. David D. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)).
[25] *See* Docket No. 35, at 4.

> A party seeking to defer a ruling on summary judgment under Rule 56[(d)] must provide an affidavit explain[ing] why facts precluding summary judgment cannot be presented. This includes identifying (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment.[26]

The United States' Rule 56(d) response does not satisfy these factors. Instead, the United States asserts that it has not been able to conduct discovery and, therefore, cannot confirm or deny Plaintiffs' factual allegations. The United States fails to state what probable facts are not known that would create a genuine issue of material facts, what steps it is taking to obtain these facts, or how much time will enable it to obtain those facts. The Court will deny the United States' Rule 56(d) request because its response and affidavit are insufficient.

Plaintiffs ask this Court to void Akirix's OA, to void the parties' Nominee Agreement, and to hold a trial to determine ownership "based upon the conduct of the parties since 2011."[27] Plaintiffs base this request on the theory that the Nominee Agreement and OA were executed to defraud the IRS and are unenforceable, void agreements.[28] In doing so, Plaintiffs openly admit that Nominee Agreement and OA were "a set of sham documents designed to provide 'cover,'" "a sham . . . and the fruit and embodiment of that sham . . ." and "facilitating documents" that "directly misled the IRS and violated public policy."[29] Jack responds by arguing that the Court's review of the OA should exclude parol evidence and that the fraud exception to the parol evidence rule is inapplicable because Larry instigated, participated in, and benefitted from the fraud.

---

[26] *Valley Forge Ins. Co. v. Heath Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (internal quotation marks and citations omitted) (second and third alterations in original).
[27] *See* Docket No. 25, at 39.
[28] *See id.* at 32.
[29] *See* Docket No. 45, at 4.

Utah's parol evidence rules dictates that "evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract," are inadmissible.[30] The rule "has a very narrow application" and only operates "in the absence of fraud or other invalidating causes."[31] "'Thus, if a contract is integrated, parol evidence is admissible only to clarify ambiguous terms,' and is 'not admissible to vary or contradict the clear and unambiguous terms of the contract.'"[32]

An integrated agreement is "a writing or writings constituting a final expression of one or more terms of an agreement."[33] "To determine whether a writing is an integration, a court must determine whether the parties adopted the writing 'as the *final and complete* expression of their bargain.'"[34] An agreement reduced to writing is presumed, in the absence of fraud, to be integrated.[35] To aid in determining whether a contract is integrated, extrinsic evidence is allowed to support "an argument that the contract is not, in fact, valid for certain reasons."[36] For example, extrinsic evidence may be used, even contrary to an explicit integration clause, "where the contract is alleged to be a forgery, a joke, a sham, lacking in consideration, or where the contract is voidable for fraud, duress, mistake, or illegality."[37]

Plaintiffs admit that although the OA contains an integration clause, the OA is void because it is an instrumentality of a scheme to defraud the IRS.[38] Plaintiffs assert that Larry and

---

[30] *Tangren Family Trust v. Tangren*, 182 P.3d 326, 330 (Utah 2008) (quoting *Hall v. Process Instruments & Control, Inc.*, 890 P.2d 1024, 1026 (Utah 1995)).
[31] *Id.* (quoting *Hall*, 890 P.2d at 1026).
[32] *Kyco Servs. LLC v. Dep't of Workforce Servs.*, 436 P.3d 268, 274 (Utah Ct. App. 2018) (quoting *Tangren Family Trust*, 182 P.3d at 330).
[33] *Tangren Family Trust*, 182 P.3d at 330 (internal quotation marks omitted).
[34] *Id.* (quoting *Bullfrog Marina, Inc. v. Lentz*, 501 P.2d 266, 270 (Utah 1972)).
[35] *Id.*
[36] *Id.*; *see also Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985).
[37] *Tangren Family Trust*, 182 P.3d at 331.
[38] *See* Docket No. 25, at 32, 37–38.

6

Jack agreed to transfer Larry's assets in Jack's name to shield them from the IRS.[39] A critical piece of the plan's success was to draft and execute the fictitious OA. Thus, based solely on the OA, Jack is Akirix's owner, but in reality, Larry actually founded, owned, and operated Akirix.

Interestingly, Jack does not challenge the authenticity of Plaintiffs' allegations regarding the Nominee Agreement or that Akirix's OA was executed, in part, to defraud the IRS. Instead, Jack states that these facts are "[i]mmaterial as to the ownership of Akirix."[40] Jack's sole contention is that because Larry was the perpetrator of the fraud he cannot use fraud as a defense to nullify or void the otherwise integrated agreement.[41] Jack relies on two Utah cases to support this proposition.

First, in *Olsen v. Bank of Ephraim*, a father attempted to avoid grazing limitations imposed by the United States Forest Service, by deeding real property and sheep to his wife.[42] The plaintiff's wife passed away intestate and the then-minor children each became 1/9th owners of the land and sheep.[43] The plaintiff argued that he still held equitable title to the property despite title to the property passing by intestacy.[44] The court concluded that the plaintiff transferred title to defraud the United States Forest Service of grazing fees and it, therefore, declined to impose a constructive trust on the land because plaintiff did not have "clean hands."[45] In doing so the court explained,

> The law will not permit a party to deliberately put the property out of his control, or the title thereto in another, for a fraudulent purpose, and then, through the intervention of a court of equity, to regain the same after his fraudulent purpose has been accomplished. Having conveyed his property for the fraudulent purpose of

---

[39] *See id.* at 32.
[40] *See, e.g.*, Docket No. 34, at 3, 9.
[41] *See id.* at 35.
[42] 68 P.2d 195, 196 (Utah 1937).
[43] *Id.* at 196–97.
[44] *Id.* at 197.
[45] *Id.* at 198.

       defeating the claims of others or to acquire an untoward advantage to himself, the law will leave him where he placed himself.[46]

In short, "a resulting trust cannot arise when the transaction on which it is founded appear to have their origin in any fraudulent purpose."[47]

    Plaintiffs attempt to distinguish *Olsen* from the present case on the basis that both Larry and Jack were both active, knowing, and willing participants in the fraudulent Nominee and Operating Agreements.[48] Unlike how the children in *Olsen* were completely innocent of their parent's fraudulent property exchange, Plaintiffs contend that Jack was "apprised, aware, and willing to carry out the Nominee Agreement, and he was willing to benefit from it for years without objection."[49]

    Jack's second case, *Hone v. Hone*, answers Plaintiffs' concern. In *Hone*, two brothers and their mother were trustees of a trust of which the mother was a beneficiary.[50] Mother's home was placed in the trust, but the brothers sought a way for their mother to receive Medicaid benefits without subjecting the home to a Medicaid lien.[51] The brothers concocted a plan whereby the home would be transferred into one of their names, so Medicaid could not attach a lien, and after their mother's death, one brother would transfer it back into the trust for both brothers to inherit.[52] The brothers executed their plan, but after their mother died, the brother did not transfer the home back into the trust.[53] The other brother brought suit to enforce the brothers' agreement

---

[46] *Id.*
[47] *Id.*
[48] *See* Docket No. 25, at 34.
[49] *Id.*
[50] 95 P.3d 1221, 1222 (Utah Ct. App. 2004).
[51] *Id.*
[52] *Id.*
[53] *Id.*

8

and to recover half of the home.[54] The court acknowledged that the brothers' scheme was an attempt to defraud Medicaid and explained that "a party who seeks an equitable remedy must have acted in good faith and not in violation of equitable principles."[55] As such, the court left the parties where it found them and permitted the brother to retain the entirety of the home.

*Hone* relies on the same principles set forth in *Olsen*, but is more similar to this case. In *Hone*, both brothers were aware of the wrongdoing, willingly participated therein, and came to the court with unclean hands. Similarly, Jack and Larry both devised a scheme whereby they attempted to defraud the IRS by transferring property into Jack's name so that Larry could avoid tax liabilities. The Court is persuaded by *Hone* and *Olsen* and will leave the parties where it found them.

According to the OA, Jack owns approximately 86% of Akirix and Larry owns nothing. At this case's inception, Larry sought to enforce the Nominee Agreement to show that the OA was a sham.[56] Based on the principles set forth in *Hone* and *Olsen*, Jack correctly notes that Larry cannot use fraud as a defense to the OA's integration clause when he instigated and participated in the fraud. Enforcement of the Nominee Agreement in spite of the OA's integration clause requires equitable relief that Larry is not entitled to because he did not come before the Court with clean hands. Larry does not dispute that he willingly and freely transferred his assets, property, and interest in Akirix to his brother, Jack. He admits that he did so as a scheme to defraud the IRS. The Court will not invalidate the OA simply because the parties'

---

[54] *Id.*
[55] *Id.* at 1223.
[56] *See, e.g.* Docket No. 5-100, at 21; Docket No. 5-16, ¶ 157 ("The Court should declare that Jack Lewis is a mere nominee of Larry Lewis and that Jack Lewis is not an actual member or manager of Akirix or any of the Nominee Companies . . . .").

fraud was revealed and Larry was forced to come clean about his scheme to defraud the IRS. Larry's post hoc confession does not clean his soiled hands.

Larry also argues that both the Nominee Agreement and OA are void so public policy favors vesting ownership in him or proceeding to trial to determine ownership based on testimonies of those familiar with his role at Akirix.[57] This argument also fails. As the *Olsen* court stated, "the law will not permit a party to deliberately put the property out of his control . . . for a fraudulent purpose, and then, through the intervention of a court of equity, to regain the same after his fraudulent purpose has been accomplished."[58] Indeed, the *Hone* court did not void the transfer of the home because the purpose underlying the transfer was to defraud. Instead, it upheld the transfer and permitted one brother to retain the home while the other brother received nothing. Likewise, the Court will not permit Larry to transfer his assets as part of a fraudulent scheme, and then recover those same assets when the fraudulent scheme was derailed.

To be clear, the Court is not enforcing the OA or Nominee Agreement that the parties admit they freely and willingly entered into. Instead, both parties are before the court with unclean hands and the Court will not aid the parties from the consequences their fraud, but leave them where their fraudulent undertaking placed them.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Partial Motion for Summary Judgment (Docket No. 6) is GRANTED. It is further

---

[57] *See* Docket No. 25, at 32, 38–39.
[58] *Olsen*, 68 P.2d at 198.

ORDERED that Defendant's Partial Motion for Summary Judgment (Docket No. 11) is GRANTED in part. It is further

ORDERED that Plaintiffs' Partial Motion for Summary Judgment (Docket No. 25) is DENIED. It is further

ORDERED that Defendant's Motion to File Surreply (Docket No. 51) is DENIED.

DATED May 4, 2020

BY THE COURT:

Ted Stewart
United States District Judge