IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YOU "ROLAND" LI, individually and derivatively on behalf of AKIRIX L.L.C., a Utah Limited Liability Company; LARRY LEWIS, an individual; AKIRIX L.L.C., a Utah Limited Liability Company; KURIOUS, L.L.C., a Utah Limited Liability Company; LLC INVESTMENT HOLDINGS, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>JACK LEWIS, an individual,<br><br>Defendant,<br><br>INTERNAL REVENUE SERVICE, a Bureau of the DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA, a necessary party,<br><br>Stakeholder. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND FOR EMERGENCY WRIT OF ATTACHMENT<br><br><br>Case No. 1:20-CV-12 TS-JCB<br><br>District Judge Ted Stewart |
| AND ALL RELATED CLAIMS. | |

This matter is before the Court on a Motion for an Emergency Temporary Restraining Order and an Emergency Motion for Prejudgment Writ of Attachment by Defendant Jack Lewis ("Jack"). For the reasons discussed below, the motions will be denied.

I. BACKGROUND

This case arises from a dispute between two brothers over an 86% ownership interest in Akirix, LLC ("Akirix"). Akirix assists international companies in conducting secured

1

transactions across the internet.[1] Plaintiff Larry Lewis ("Larry") and Plaintiff Roland Li ("Roland") founded Akirix in 2011 and have grown it over the past nine years.[2] Roland is the undisputed owner of the remaining 14%.[3]

On or about August 1, 2010, Jack and Larry entered into an agreement whereby Jack would act as Larry's nominee ("Nominee Agreement").[4] Under the Nominee Agreement, Jack would hold, for Larry's benefit, all of Larry's real property and his ownership interest in various legal entities, including Akirix and other companies.[5] Larry put various assets in Jack's name.[6] For use of his name, Jack accepted 10% of Larry's earnings.[7]

The parties do not dispute that Larry transferred assets into Jack's name as part of a strategy to avoid pre-existing tax claims by the United States Internal Revenue Service ("IRS").[8] As part of the brothers' scheme to avoid tax-liability, Larry, Roland, and Larry's brother Jack executed Akirix's Operating Agreement ("OA"). The OA issued approximately 86% of Akirix's membership units to Jack, and it issued approximately 14% to Roland. The OA issued no membership interest to Larry.[9]

On May 4, 2020, the Court granted partial summary judgment in Jack's favor thereby dismissing Plaintiffs' claims.[10] The Court did so on grounds that both Larry and Jack had

---

[1] *See* Docket No. 66, at 2.
[2] *See id.*
[3] *See id.*
[4] *See id.*
[5] *See id.*
[6] *See id.*
[7] *See id*
[8] *See id.*
[9] *See id.*
[10] *See id.* at 10.

2

unclean hands and thus Larry was ineligible for equitable remedies.[11] The Court also made clear that it was not enforcing the OA or Nominee Agreement but was simply leaving the parties where it found them.[12]

Shortly after the Court's May 4 decision, Jack filed the instant motions. Jack asks the Court for a temporary restraining order ("TRO") to freeze the bank accounts of various parties and non-parties, to remove those parties from certain bank accounts, and to remove the court-appointed CEO, Ed Cameron ("Ed"), from Akirix.[13] Jack also requests that a prejudgment writ of attachment be placed on various bank accounts and assets currently owned and maintained by Plaintiffs.[14]

## II. DISCUSSION

To obtain a temporary restraining order, Plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[15] Since Defendant requests an extraordinary remedy, his "right to relief must be clear and unequivocal."[16]

A.  IRREPERABLE HARM

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate

---

[11] *See id.* ("[B]oth parties are before the court with unclean hands and the Court will not aid the parties from the consequences [of] their fraud, but leave them where their fraudulent undertaking placed them.")
[12] *See id.*
[13] *See* Docket No. 67, at 3.
[14] *See* Docket No. 68, at 2–3.
[15] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).
[16] *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

that such injury is likely before the other requirements for the issuance of an injunction will be considered."[17] Demonstrating irreparable harm is "not an easy burden to fulfill."[18]

Irreparable harm means an injury that "must be both certain and great, and that it must not be merely serious or substantial."[19] "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[20] Thus, "the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[21] This typically involves the type of injury that cannot be atoned for in money or when a remedy cannot be fashioned following a determination on the merits.[22] "[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages."[23]

Jack tacitly admits that the injury involved can be atoned for in money but argues that Plaintiffs "have the wherewithal, knowledge, and experience to transfer these funds internationally or to simply make these funds disappear."[24] Jack believes a TRO is necessary to prevent funds from being placed beyond his reach and the reach of Akirix.[25] Jack supports his argument by attacking Plaintiffs' character. In Jack's view, his brother Larry is a "tax-evading

---

[17] *Dominion Video Satellite, Inc. v. Echostar Satellite, Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks omitted).
[18] *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).
[19] *Dominion Video Satellite, Inc.*, 356 F.3d at 1262 (internal quotation marks omitted).
[20] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).
[21] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).
[22] *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).
[23] *Heideman*, 348 F.3d at 1189.
[24] *See* Docket No. 67, at 16.
[25] *Id.*

4

scam artist,"[26] and Roland "has a criminal history for hacking into accounts for his personal benefit."[27] Jack also argues that large outflows of cash from Akirix to Midnight Management Services Group, LLC ("MMSG"), an entity wholly owned and controlled by Nada Lewis ("Nada"), Larry's wife, demonstrates Plaintiffs' ability and willingness to make Akirix's funds disappear.

Jack's character attacks do not support his assertion that Jack will suffer irreparable harm without a TRO, and the Court declines to entertain petty name calling. Further, as the Court previously noted:

> Jack's requested relief concerns money and various assets, such as vehicles, where the value thereof is easily ascertainable. Indeed, Jack's motions detail the precise amounts allegedly being transferred to Plaintiffs and provides receipts detailing the value of various assets Jack wishes to freeze. Since this harm could be compensable by monetary damages following a trial on the merits, Jack's alleged harm is not so irreparable as to warrant *ex parte* consideration.[28]

The same analysis applies with equal force today. Jack's requested relief is compensable by monetary damages.

With respect to transfers made to MMSG, Plaintiffs assert that payments from Akirix to MMSG covered Akirix's operating costs because Akirix leases its employees and equipment from MMSG.[29] Plaintiffs provide sufficient documentation to support this assertion.[30] Indeed, Plaintiffs' exhibits demonstrate services invoiced from MMSG to Akirix, payment from Akirix to MMSG, and services invoiced again the following month. Jack does not dispute that MMSG provides valuable services to Akirix. Instead he takes issue with the costs.[31] As the moving party,

---

[26] *Id.*
[27] *Id.*
[28] *See* Docket No. 70, at 3.
[29] *See* Docket No. 79, at 11.
[30] *See* Docket No. 79, at 36–40.
[31] *See* Docket No. 82, at 3.

Jack bears the burden of proving his injury is both clear and unequivocal. Jack has not clearly and unequivocally shown that payments from Akirix to MMSG were how Plaintiffs hid money. For this reason, Jack's evidence fails to demonstrate the type of certain, immediate harm required for issuance of injunctive relief. In short, Jack has only shown a mere possibility of irreparable harm, which the Supreme Court has declared insufficient. Therefore, Jack has not met his burden on this element.

B.      LIKELIHOOD OF SUCCESS

Jack's likelihood of success on the merits is far from clear. The Court's May 4 decision recognized that "Jack and Larry both devised a scheme whereby they attempted to defraud the IRS."[32] It also recognized that both brothers' hands were unclean and the Court "[would] not aid the parties from the consequences [of] their fraud, but leave them where their fraudulent undertaking placed them."[33]

Jack argues that his hands are clean and that only Plaintiffs have stated that Jack's hands are unclean.[34] This novel argument contradicts the Court's May 4 decision where the Court concluded that "both parties are before the court with unclean hands . . . ."[35] The Court reached this conclusion based on Plaintiff's uncontroverted factual statements.[36] Jack argues that he sufficiently controverted Plaintiffs' allegations by challenging the allegations materiality pursuant to DUCivR56-1(c)(3).[37] Under the local rule, a party may challenge the materiality of a

---

[32] *See* Docket No. 66, at 9.
[33] *Id.* at 10.
[34] *See* Docket No. 82, at 8.
[35] *See* Docket No. 66, at 10.
[36] *See e.g.*, Docket No. 25, at 25 (stating that Jack wrote a friend on his Akirix work computer "I put it in my name to help out my brother which I'm still not sure why because I've always hated his guts. He owes the IRS millions of dollars and therefore he cannot have anything in his name so I agreed to do it for 10%.")
[37] *See* Docket No. 82, at 8.

factual allegation, but doing so does not necessarily controvert the allegation's authenticity. It merely challenges the allegations' relevance to the issues before the Court. Here, Jack challenged the materiality of Plaintiffs' allegations by claiming they were irrelevant to Jack's theory of the case. Jack was permitted to do so, but such argument was "probably best left for the Analysis Section."[38] The Court, therefore, deemed such allegations admitted[39] and analyzed the materiality issue in the decision's "Analysis" section. As the Court did in its May 4 decision, the Court concludes that Jack's hands are as unclean because he planned, participated in, and benefited from the scheme to defraud the IRS.

Despite Jack's unclean hands, he is before the Court on two motions for equitable relief. The Court, again, declines to aid the parties from the consequences of their fraud. As such, Jack cannot show a substantial likelihood of success on the merits because the doctrine of unclean hands is a two-way street when both parties planned, participated in, and benefited from fraud. As the Supreme Court has stated, "in the law, what is sauce for the goose is normally sauce for the gander."[40] The Court cannot say that unclean hands bars Larry's claims and simultaneously say that Jack should prevail on these equitable requests.

Jack also seeks injunctive relief against Nada, MMSG, and other various non-party entities. At the time of Jack's motion Nada and MMSG were parties to this case, but they were recently dismissed.[41] Accordingly, Jack cannot show a substantial likelihood of success on the merits against these non-parties.

---

[38] *De Baca v. United States*, 399 F. Supp. 3d 1052, 1075 n.29 (D. N.M. 2019).
[39] *See* FED. R. CIV. P. 56(e)(2).
[40] *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016).
[41] *See* Docket No. 73.

C.   BALANCE OF EQUITITIES

Despite Jack's soiled hands, he seeks control over assets belonging to parties and non-parties who did not participate in the brothers' fraudulent undertaking. For example, Jack seeks to remove Roland from Akirix's bank accounts and seize $52,500 belonging to Roland. Roland is Akirix's undisputed minority owner and is—by the parties' accounts—innocent of the brothers' fraudulent undertaking. Equity balances away from Jack's unclean hands and towards an innocent party who would suffer harm were relief granted.

With respect to Larry and Akirix, Jack argues that they will suffer little or no harm were relief granted. Plaintiffs, on the other hand, argue that Akirix cannot continue operation if Larry, Roland, and Ed are removed from Akirix's bank accounts because they are keeping the company afloat, and Jack has been absent from the company for approximately 19 months.[42] Equity favors allocating harm and risk away from innocent parties and towards culpability. Here, it is in the innocent parties' best interest if Akirix maintains its operations. Granting relief would inhibit Akirix's operations as Larry, Roland and Ed would be prohibited from managing its operations. Thus, equity does not favor Jack.

D. BALANCE OF THE HARDSHIPS AND PUBLIC INTEREST

Jack argues that granting relief is the in the public interest so that the judicial system is respected and parties comply with court orders. Jack also argues for a public interest in the actual owner of a business being allowed to run their business as they see fit. To reiterate, the Court's May 4 decision did not establish Jack's ownership interest in Akirix. Instead, it stated that Larry had no equitable ownership claim. Thus, Jack's proffered public interest—that business owners

---

[42] *See* Docket No. 79, at 18.

8

are allowed to run their business as they see fit—is inapplicable here because Akirix's majority ownership has not been established.

Plaintiffs' proffered public interest favoring denial is persuasive. Plaintiffs argue that Jack's ownership claim arises out of the OA, which was the fruit of the ill-advised fraudulent tax scheme. Thus, the Court will not further the ill-forged agreement as the very agreement itself is against the public interest. Plaintiffs correctly note that the public interest is not advanced by furthering Jack's ownership claims, and this element is not satisfied.

Jack's request for a writ of attachment will also be denied. The justifications previously discussed apply equally with respect to the writ of attachment. For example, the Court's May 4 decision specifically stated that the Court refused to enforce the OA. Jack's argument for a writ of attachment is that under the OA he maintains an ownership interest in Akirix.[43] The Court cannot grant relief because doing so would enforce the OA. Further, Rule 64 of the Federal Rules of Civil Procedure authorizes the Court to apply Utah law regarding writs of attachment.[44] Under Utah law, a party seeking a writ of attachment must demonstrate that "the writ is not sought to hinder, delay, or defraud a creditor of the defendant."[45] The entire purpose of Larry and Jack's fraudulent tax scheme was to hinder and delay payment to the IRS. As such, any further steps to put assets into Jack's hands may adversely impact the rights of the IRS. For these reasons and those stated above, the Court will deny the writ of attachment.

---

[43] *See* Docket No. 68, at 17.
[44] *First Guaranty Bank v. Republic Bank, Inc.*, 303 F. Supp. 3d 1200, 1204 (D. Utah 2017).
[45] UTAH R. CIV. P. 64A(c)(2).

### III.  CONCLUSION

It is therefore

ORDERED that the Motion for an Emergency TRO (Docket No. 67) is DENIED. It is further

ORDERED that the Motion for an Emergency Writ of Attachment (Docket No. 68) is DENIED.

DATED June 15, 2020

                BY THE COURT:

                _____
                Ted Stewart
                United States District Judge