IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YOU "ROLAND" LI, individually and derivatively on behalf of AKIRIX L.L.C., a Utah Limited Liability Company; LARRY LEWIS, an individual; AKIRIX L.L.C., a Utah Limited Liability Company; KURIOUS, L.L.C., a Utah Limited Liability Company; LLC INVESTMENT HOLDINGS, L.L.C., a Utah Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>JACK LEWIS, an individual,<br><br>Defendant,<br><br>INTERNAL REVENUE SERVICE, a Bureau of the DEPARTMENT OF TREASURY, UNITED STATES OF AMERICA, a necessary party,<br><br>Stakeholder. | MEMORANDUM DECISION AND ORDER GRANTING UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Case No. 1:20-CV-12 TS-JCB<br><br>District Judge Ted Stewart |
| AND ALL RELATED CLAIMS. | |

This matter is before the Court on the United States' Motion for Partial Summary Judgment. For the following reasons, the Court will grant the Motion.

I.   BACKGROUND

This case arises from a dispute between two brothers over an 86% ownership interest in Akirix, LLC ("Akirix"). Akirix assists international companies in conducting secured transactions across the internet.[1] Plaintiff Larry Lewis ("Larry") and Plaintiff Roland Li

---

[1] *See* Docket No. 66, at 2.

1

("Roland") founded Akirix in 2011 and have grown it over the past nine years.[2] Roland is the undisputed owner of the remaining 14%.[3]

On May 4, 2020, the Court denied a Motion for Partial Summary Judgment by Plaintiffs, granted a Motion for Partial Summary Judgment by Jack, and granted in part a second Motion for Partial Summary Judgment by Jack.[4] In doing so, the Court concluded that on or about August 1, 2010, Jack and Larry entered into an agreement whereby Jack would act as Larry's nominee ("Nominee Agreement").[5] Under the Nominee Agreement, Jack would hold, for Larry's benefit, all of Larry's real property and his ownership interest in various legal entities, including Akirix and other companies.[6] Larry put various assets in Jack's name.[7] For use of his name, Jack accepted 10% of Larry's earnings.[8] The parties entered into the Nominee Agreement as part of a strategy to avoid pre-existing tax claims by the United States Internal Revenue Service ("IRS").[9] As part of the brothers' scheme to avoid tax-liability, Larry, Roland, and Jack executed Akirix's Operating Agreement ("OA"). The OA issued approximately 86% of Akirix's membership units to Jack, and it issued approximately 14% to Roland. The OA issued no membership interest to Larry.[10]

The United States joined this case as a necessary party because it claims an interest in the Akirix ownership interest the brothers dispute. The United States seeks partial summary judgment on its Claim in Response, which "requests that the Court determine, adjudge, and

---

[2] *See id.*
[3] *See id.*
[4] *See id.*
[5] *See id.*
[6] *See id.*
[7] *See id.*
[8] *See id*
[9] *See id.*
[10] *See id.*

decree that the United States has valid and subsisting tax liens attaching to all interests in property and rights to property of Larry Lewis."[11] In short, the United States seeks a declaratory judgment that it has valid and subsisting tax liens against Larry for unpaid federal income taxes, and these liens attach to Larry's property interest in Akirix.[12]

The United States has produced tax assessments records against Larry for unpaid federal income taxes, penalties, interest and other statutory additions for 2004–2007.[13] Based on these records, Larry's unpaid tax balance is substantial.[14]

No party has opposed the United States' Motion and the deadline for doing so passed on July 6, 2020.[15] The Court will, therefore, treat the Motion as an unopposed motion for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Generally, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[17] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[18]

---

[11] *See* Docket No. 102, at 2.
[12] *Id.*
[13] *See e.g.*, Docket No. 102-2, at 2–8.
[14] *See* Docket No. 102, at 6.
[15] *See* DUCivR 7-1(b)(3)(A) (explaining that responses to motions filed pursuant to Rule 56 of the Federal Rules of Civil Procedure must be filed within twenty-eight (28) days after service of the motion).
[16] FED. R. CIV. P. 56(a).
[17] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).
[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

This standard is somewhat modified in an unopposed motion for summary judgment. As a preliminary note, it is improper for the Court to grant summary judgment simply because it is unopposed.[19] Instead, the Court must "examin[e] the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."[20] In doing so, the Court may consider any properly stated facts as "undisputed for purposes of the motion."[21]

## III.   ANALYSIS

When a person "neglects or refuses" to pay tax after the IRS has demanded payment, a federal tax lien attaches to present and later-acquired "property and rights to property, whether real or personal."[22] This provision is to be interpreted broadly and is intended to encompass "every interest in property that a taxpayer may have."[23]

Here, the United States made and has outstanding federal income tax assessments against Larry for the 2004, 2005, 2006, and 2007 tax years. Thus, under Section 6321, the United States has valid tax liens for Larry's unpaid taxes that attach to all of Larry's property rights. Under the theories discussed below, this includes Larry's property interest in Akirix.

A. Fraudulent Transfer

Utah's Uniform Fraudulent Transfer Act ("UFTA")[24] "was designed to prevent fraudulent transfers of assets by debtors who seek to defraud creditors or avoid debts by placing

---

[19] *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002); *United States v. Dawes*, 344 F. Supp. 2d 715, 718 (D. Kan. 2004); DUCivR 7-1(d).
[20] *Reed*, 312 F.3d at 1195.
[21] *See* FED. R. CIV. P. 56(e)(2).
[22] 26 U.S.C. § 6321.
[23] *Drye v. United States*, 528 U.S. 49, 56 (1999) (internal quotation marks omitted).
[24] *See generally* Utah Code Ann. § 25-6-1, *et seq.* (2016). This act was renamed and renumbered as the Utah Uniform Voidable Transactions Act, Utah Code Ann. § 25-6-101, *et seq.*, for transfers made on or after May 9, 2017. These amendments do not alter the Court's analysis.

assets beyond creditors' reach."[25] Under UFTA, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a [present or future] creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud" a creditor.[26] A transfer is to be interpreted very broadly and means "every mode, direct or indirect, absolute or conditional, or voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset . . . ."[27] "To determine whether a transferor possessed the requisite 'actual intent,' courts consider the presence or absence of badges of fraud,"[28] including the following:

> (a) the transfer or obligation was to an insider;
> (b) the debtor retained possession or control of the property transferred after the transfer;
> (c) the transfer or obligation was disclosed or concealed;
> (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) the transfer was of substantially all the debtor's assets;
> (f) the debtor absconded;
> (g) the debtor removed or concealed assets;
> (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.[29]

Nearly all these factors favor the Court finding that Larry acted with actual intent to hinder, delay, or defraud the IRS. For example, Larry transferred his entire ownership interest in Akirix to an insider—his brother, Jack. Under the Nominee Agreement, Jack's name was on the

---

[25] *Timothy v. Pia, Anderson, Dorius, Reynard & Moss LLC*, 424 P.3d 937, 940 (Utah 2018).
[26] Utah Code Ann. § 25-6-5(1) (2016).
[27] *Id.* § 25-6-2(12) (2016).
[28] *United States v. Wade*, 790 F. App'x 906, 909 (10th Cir. 2019) (quoting Utah Code Ann. § 25-6-5(2)).
[29] Utah Code Ann. § 25-6-5(2) (2016).

ownership documents, but Larry retained control of Akirix. The Nominee Agreement was intentionally concealed from the United States, and the brothers took steps to conceal their plan so Larry could avoid his tax liabilities. Larry did not receive any consideration in exchange for his transfer of Akirix's ownership, aside from the benefit of concealing assets from the IRS. Most importantly, Larry was aware of the tax assessments and has openly admitted to the Court that he engaged in the Nominee Agreement to defraud the IRS.[30] For these reasons, the Court concludes that Larry acted with actual intent when he fraudulently transferred his ownership interest in Akirix in an attempt to hinder, delay, and defraud the IRS.

A separate avenue for finding that Larry fraudulently transferred his interest in Akirix is that Larry did not receive reasonably equivalent value in exchange for the transfer.[31] Under UFTA, a transfer is also fraudulent if the debtor makes a transfer "without receiving reasonably equivalent value" and the debtor incurred "debts beyond [the debtor's] ability to pay as they became due."[32]

Here, Larry received no reasonably equivalent value in exchange for his transferred Akirix ownership interest. As noted above, the primary benefit Larry incurred in the transfer was the illicit benefit of concealing assets from the IRS. Larry has openly admitted this fact.[33] Moreover, Larry's asset transfer rendered him unable to pay his tax liabilities when they became due.

---

[30] *See, e.g.,* Docket No. 45, at 12–16.
[31] *See* Utah Code Ann. § 25-6-5(1)(b) (2016).
[32] *Id.* § 25-6-5(1)(b)(ii).
[33] *See. e.g.* Docket No. 25, at 2 ("The undisputed evidence shows that Jack knowingly agreed, for compensation, to act as Larry's nominee in a strategy to obscure Larry's interest in Akirix for various reasons including pending claims of the IRS."); Docket No. 45, at 2 ("Larry was always the actual owner of a business now subject to the liens claims by the IRS.").

B. Constructive Trust

Enforcing federal tax liens involves questions of both state and federal law.[34] The Court first looks to state law to determine what rights a taxpayer has in property.[35] Then, federal law determines whether that interest qualifies as "property" to which the tax lien can attach.[36]

With respect to constructive trusts, the Court is given "considerable latitude and discretion in applying and formulating an equitable remedy . . . ."[37] Generally, a constructive trust "is imposed for the recovery of wrongfully held property."[38] Courts impose constructive trusts "where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior."[39] To establish a wrongful act, a person "must have obviously received funds by mistake or participated in active or egregious misconduct."[40]

Here, the United States has demonstrated that all three elements for imposing a constructive trust are present. First, a wrongful act occurred when Larry and Jack engaged in the fraudulent tax scheme. Prior to the ill-advised Nominee Agreement, Akirix was formed and ownership was vested in Larry and Roland's names. After the Nominee Agreement, Larry's ownership was titled in Jack's name, but Larry continued to

---

[34] *See Holman v. United States*, 505 F.3d 1060, 1067 (10th Cir. 2007).
[35] *Drye*, 528 U.S. at 58.
[36] *Id.*
[37] *Rawlings v. Rawlings*, 240 P.3d 754, 760 (Utah 2010) (internal quotation marks omitted).
[38] *In re Seneca Oil Co.*, 906 F.2d 1445, 1450 (10th Cir. 1990); *accord Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 599 (Utah 1983).
[39] *Wilcox v. Anchor Wate, Co.*, 164 P.3d 353, 362 (Utah 2007).
[40] *Id.*

hold equitable title. The parties engaged in such behavior to defraud Larry's creditors, including the IRS.

Second, unjust enrichment occurs "when the moving party has an 'equitable interest' in the property it seeks a constructive trust over."[41] The IRS has an equitable interest in the 86% ownership interest in Akirix because, but for the brothers' fraudulent tax scheme, the IRS would have used that ownership interest to satisfy Larry's tax liabilities. Were Jack permitted to retain title to Akrix's ownership, he would be unjustly enriched.

Third, the 86% ownership interest can be traced directly to the brothers' wrongful behavior under the Nominee Agreement and fraudulent tax scheme. Thus, the disputed Akirix ownership interest may be subjected to a constructive trust.

C. Nominee

Alternatively, because of the brothers' Nominee Agreement, the IRS's liens attach to Larry's property held by Jack—Larry's nominee. 26 U.S.C. § 6321 provides that property to which a federal tax lien attaches "may include not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer."[42]

Here, pursuant to the brothers' Nominee Agreement, Larry put various assets in Jack's name—including an 86% ownership interest in Akirix—in exchange for 10% of Larry's earnings. Larry did so to avoid or delay payment of his federal income taxes. Larry has

---

[41] *Lodges at Bear Hollow Condo. Homeowners Assoc. Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 153 (Utah Ct. App. 2015).
[42] *Holman*, 505 F.3d at 1065 (internal quotation marks omitted).

acknowledged the brothers' nominee relationship multiple times before the Court.[43] Jack acted as Larry's nominee, and therefore the IRS's liens attach to Larry's 86% ownership held in Jack's name.

## IV.   CONCLUSION

It is therefore

ORDERED that the United States' Motion for Partial Summary Judgment (Docket No. 102) is GRANTED.

DATED July 29, 2020

                                                   BY THE COURT:

                                                   _____
                                                   Ted Stewart
                                                   United States District Judge

---

[43] *See, e.g.*, Docket No. 25, at 3, 32, 36.